1

2

3

4

5

6
IN THE UNITED STATES DISTRICT COURT

7

8
FOR THE NORTHERN DISTRICT OF CALIFORNIA

9

10
UNITED STATES OF AMERICA,                        No. CR 05-00580 WHA

11
                    Plaintiff,

12
    v.                                           **ORDER DENYING MOTION
                                                 TO SUPPRESS**
13
RICHARD L. OLIVIA,

14
                    Defendant.

15
_____/

16

17
### INTRODUCTION

18
          In this prosecution for firearm possession and drug dealing, defendant Richard L. Olivia

19
moves to suppress all evidence found on his person and in his truck on grounds that the searches

20
and seizures violated the Fourth Amendment.  Because police had a good reason to believe Mr.

21
Olivia was selling or buying drugs, the search of his person was a lawful incident to his arrest.

22
Police also had probable cause to believe there was evidence of crime in Mr. Olivia's truck.

23
The police did not violate his Fourth Amendment rights.  The motion therefore is **DENIED**.

24
### STATEMENT

25
          In 2003, Alfonso Rodriguez allegedly sold methamphetamine to a police officer and a

26
prosecution was commenced.  Warrants for his arrest were issued.  In March 2005, an informant

27
told police that she had been to Mr. Rodriguez's apartment on Golden Gate Avenue in San

28
Francisco and had seen drugs there packaged for sale.  She also told police that he was selling

gamma hydroxybutyrate (GHB), an illegal sedative, from the apartment (Statement of Probable

Cause of Sergeant/Inspector John Cagney #341, Search Warrant and Affidavit, S.F. Super. Ct.,

United States District Court

For the Northern District of California

**United States District Court**
For the Northern District of California

1   Opp., Exh. B). On March 22, 2005, the state court issued a search warrant for Mr. Rodriguez's

2   person and for the apartment (Search Warrant, S.F. Super. Ct., Opp., Exh. B).

3   Police began a stakeout of the apartment at noon on March 30. At about 3 p.m., the

4   accused in the instant case, Richard Olivia, parked his pickup truck on the apartment building's

5   driveway, blocking the sidewalk, and walked inside (Cagney Decl. ¶¶ 2, 4 and S.F. Police Dep't

6   Incident Report No. 050352920, Opp., Exh. A). The apartment building was at least three

7   stories high. The apartment was on the top floor. It was accessible by an interior corridor

8   (Olivia Decl. ¶ 2). Three police officers went to the front door of the apartment. At the

9   threshold, they heard men inside discussing a drug transaction. They heard two of the men say

10  the following: "filling a lot of orders," "I owe ninety dollars" and "I need to weigh that out."

11  They also heard plastic being crumpled and "objects being moved about." The officers

12  suspected a drug deal was in progress (S.F. Police Dep't Incident Report No. 050352920, Opp.,

13  Exh. A; Perea Decl. ¶ 7, Criminal Compl., Br., Exh. B).

14  At about 3:10 p.m. or 3:15 p.m., Mr. Olivia opened the door. Police inspector John

15  Cagney announced to Mr. Olivia, Mr. Rodriguez and a third person, each no more than five feet

16  from the front door, that a search warrant was being executed. All three were detained. A

17  fourth man, who had been in a bedroom away from the front door, also was detained. Police

18  found in Mr. Rodriguez's bag what they believed to be a bag of methamphetamine, ninety-

19  seven tablets of 3-4 methylenedioxymethamphetamine (MDMA or Ecstasy) and three bottles of

20  GHB. They also found a scale in the bag. Another indication of a drug deal was the brevity of

21  the visit made by Mr. Olivia. Police arrested all three men who had been near to the door (S.F.

22  Police Dep't Incident Report No. 050352920, Opp., Exh. A; Perea Decl. ¶¶ 7–8, Criminal

23  Compl., Br., Exh. B).

24  Searching Mr. Olivia, they found 1.69 grams of suspected methamphetamine, $1,232 in

25  cash, a switchblade and a key ring with four keys, including one to the pickup truck parked in

26  the driveway. Searching the apartment, they found envelopes identical to the one containing the

27  methamphetamine found on Mr. Olivia.

28

**United States District Court**
For the Northern District of California

1    Inspector Cagney and one Officer Watts, a member of the police narcotics division, then

2    searched Mr. Olivia's truck.  In it, they found a loaded pistol and additional ammunition.  A

3    briefcase in the truck contained two letters addressed to Mr. Olivia at 128 Castro St. in

4    Richmond and a notebook with records of who had paid and who owed money for unidentified

5    transactions.  In the back seat, there was a box that contained about 60 grams of suspected

6    Ecstasy.  The truck was then towed.  At the police station, Mr. Olivia stated that, although he

7    lived in Fairfield, he had received letters at the Richmond address because he had done

8    construction work there.  Using this information, police then obtained a search warrant for the

9    Richmond house and a vehicle in its driveway.  Defendant is not moving to suppress any

10   evidence seized in that search (S.F. Police Dep't Incident Report No. 050352920, Opp., Exh. A;

11   Perea Decl. ¶¶ 7–8, 10 and pt. III, Criminal Compl., Br., Exh. B).

12                                          **ANALYSIS**

13        The Fourth Amendment bars the government from conducting unreasonable searches

14   and seizures of people's "persons . . . papers, and effects."  Searches and seizures are

15   presumptively unreasonable unless they are authorized by a warrant issued by a judge or

16   magistrate, subject to certain exceptions.  *Katz v. United States*, 389 U.S. 347, 357 (1967).  A

17   judge or magistrate may only issue a warrant if it is based upon probable cause supported by

18   oath or affirmation, and if it describes with particularity the place to be searched and the person

19   or things to be seized.

20        In the instant case, the government concedes that it had no warrant authorizing it to

21   search defendant's person, papers or truck.  Defendant argues that no exception to the warrant

22   requirement justifies or excuses the government's searches and seizures of his person and

23   possessions.  The government has the burden of showing, by a preponderance of the evidence,

24   that an exception applies.  *United States v. Linn*, 880 F.2d 209, 214 (9th Cir. 1989).

25        **1.      Search of Defendant's Person.**

26        One exception to the warrant requirement allows police to arrest a person without a

27   warrant if there is reasonable cause to believe that the person is guilty of a felony.  *United*

28   *States v. Watson*, 423 U.S. 411, 417 (1976).  Police may search a person they arrest at the time

                                               3

they take him or her into custody, for purposes of finding weapons and of confiscating evidence the suspect might destroy.  *Chimel v. California*, 395 U.S. 752, 762–63 (1969).

Defendant likens the searches here to the invalid ones in *Ybarra v. Illinois*, 444 U.S. 85 (1979), and *United States v. Robertson*, 833 F.2d 777 (9th Cir. 1987).  In *Ybarra*, police searched a tavern and its bartender pursuant to a warrant.  At the same time, they searched a customer at the tavern.  The Supreme Court held that the customer's presence at the site of the search, without more, did not justify the warrantless search of his person.  *Ybarra*, 444 U.S. at 88–89, 96.  In *Robertson*, police arrested a woman who was found leaving the home of a man subject to an arrest warrant.  The Ninth Circuit held that, as in *Ybarra*, the woman's "mere proximity" to the man subject to the warrant did not justify her warrantless seizure.  *Robertson*, 833 F.2d at 779, 782.

Unlike *Ybarra* and *Robertson*, police in the instant case had much more than defendant's proximity to Mr. Rodriguez on which to base their suspicion that defendant had committed a felony.  They had heard two male voices discussing a drug transaction behind the very door defendant opened no more than fifteen minutes later.  Defendant was in the home of a suspected drug dealer.  Police had good reason to believe that he may have been one of the men who had been negotiating a drug sale.  Contrary to Mr. Olivia's assertion, the officers' reasonable suspicion that he had been involved in a drug transaction was increased by their discovery of a scale, methamphetamine and significant quantities of Ecstasy and GHB on Mr. Rodriguez.  Those revelations increased suspicion of defendant because they bolstered the interpretation of the overheard conversation as one related to drugs.  The finger of suspicion pointed all the more at defendant because he was near Mr. Rodriguez, the suspected dealer, and was apparently leaving the apartment after a visit of, at most, fifteen minutes, which is consistent with a short visit to purchase drugs.

Even if police could not say who, in particular, was involved in the drug transaction, there was reason enough to suspect everyone in the apartment.  *See Maryland v. Pringle*, 540 U.S. 366 (2003).  In *Pringle*, the Supreme Court held that police had probable cause to arrest all three occupants of a car in which drugs and cash were found, even though all of them denied

United States District Court

For the Northern District of California

1   responsibility and police had no particularized suspicion as to each occupant.  The Supreme

2   Court noted that "[t]he quantity of drugs and cash in the car indicated the likelihood of drug

3   dealing, an enterprise to which a dealer would be unlikely to admit an innocent person with the

4   potential to furnish evidence against him."  *Id.* at 373.  Similarly, it was reasonable for the

5   officers in the instant case to suspect defendant of a drug offense given that he was in a small,

6   private apartment during discussion of a drug deal.

7        For all these reasons combined, police had reasonable cause to believe defendant was

8   guilty of a felony drug offense.  Police therefore validly arrested him.  The validity of the arrest

9   justified the search of his person that they conducted immediately thereafter.

10       **2.      Search of Defendant's Truck.**

11       "If a car is readily mobile and probable cause exists to believe it contains contraband,

12  the Fourth Amendment . . . permits police to search the vehicle" without a warrant.

13  *Pennsylvania v. Labron*, 518 U.S. 938, 940 (1996).  Probable cause requires less certainty than

14  either the preponderance-of-evidence or beyond-a-reasonable-doubt standards.  "[T]he

15  substance of all the definitions of probable cause is a reasonable ground for belief . . . ."

16  *Pringle*  540 U.S. at 371.

17       After police searched defendant, they knew the truck parked in the driveway was his.

18  They had seen him arrive in it.  They found keys to it in his pocket.  It was readily mobile.

19  Inspector Cagney knew that "drug dealers and those involved in drug trafficking often keep

20  items related to drug dealing activities in their cars[,]" including "indicia, pay-owe records,

21  narcotics, and firearms" (Cagney Decl. ¶ 5).  Defendant concedes that "drug dealers routinely

22  keep an inventory of drugs, as well as scales, packaging materials, pay owe sheets, drug

23  manufacturing equipment and firearms, in their . . . vehicles as a matter of course"  (Reply 5).

24  If there was probable cause to believe that defendant was a drug dealer or "involved in drug

25  trafficking," then there would be probable cause to believe the truck had contraband.

26       In the instant case, there was evidence both that defendant was a drug dealer and that he

27  was a drug consumer.  Several facts suggest he was a consumer and buyer.  He was carrying

28  1.69 grams of methamphetamine.  Second, the methamphetamine was in the same type of

5

envelope found in quantity within the accused drug dealer's apartment, suggesting that Mr. Olivia had been a customer.  That he was a customer did not defeat the government's suspicion that he also was a dealer.  And, Mr. Olivia was carrying $1,232 in cash in the apartment of an accused drug dealer immediately after police overheard a drug transaction.  It was reasonable to believe that this money represented the proceeds of a sale Mr. Olivia had just made to Mr. Rodriguez.  Such a large quantity of cash is consistent with defendant being a dealer.  Because there was probable cause to believe defendant was a dealer, there was probable cause to believe he had evidence of crime in his truck.

Police would have had probable cause to believe there was evidence of crime in defendant's truck even if there were not probable cause to believe he was a drug dealer.  Even a mere drug consumer who drove his truck to buy drugs might have items in the vehicle that would be evidence of crime, such as paper or electronic records of the name and address of the dealer with whom he had come to do business, or directions to the location.

There was probable cause to believe defendant's truck contained evidence of crime.  The search therefore was justified.*

### CONCLUSION

Police were justified in searching and seizing defendant and his truck.  His motion to suppress the evidence, along with the related requests for discovery and a hearing, are **DENIED**.

**IT IS SO ORDERED.**

Dated:  December 11, 2006

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

---

* Police may search the passenger compartment of a vehicle without a warrant if the search is incident to the lawful custodial arrest of one or more of the automobile's occupants or recent occupants. *Thornton v. United States*, 124 S.Ct. 2127, 2129 (2004).  Contrary to the government's assertion, there is no justification to extend the rule to the circumstances of this case.  The exception allows police to search for weapons that may be in reach of the occupants or recent occupants, and to prevent destruction of evidence.  Police here did not search Mr. Olivia's truck until about 20 minutes after he left it.  Furthermore, when they began the search, he was inside the living room of an apartment on the top floor of a building.  The truck was parked at street level.  Short of Mr. Olivia breaking free of custody, leaping from an open window and falling like Spiderman three stories to his truck, there was no way for him to get a weapon or destroy evidence in it.  There is thus no cause, despite the reduced expectation of privacy in automobiles, to extend the exception to the search of Mr. Olivia's truck.